Slip Op. 11-36

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **JINAN YIPIN CORPORATION, LTD. and SHANDONG HEZE INTERNATIONAL TRADE AND DEVELOPING COMPANY**, | |
| Plaintiffs, | **Before: Timothy C. Stanceu, Judge** |
| v. | **Consol. Court No. 04-00240** |
| **UNITED STATES**, | |
| Defendant. | |

## <u>OPINION AND ORDER</u>

[Affirming certain decisions in the second remand redetermination issued by the United States Department of Commerce in a review of an antidumping duty order on fresh garlic from the People's Republic of China and granting request for a voluntary remand]

Dated: April 12, 2011

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Bruce M. Mitchell* and *Mark E. Pardo*) for plaintiff Jinan Yipin Corporation, Ltd.

*Lee & Xiao* (*Yingchao Xiao*) for plaintiff Shandong Heze International Trade and Developing Company.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Richard P. Schroeder* and *Mark T. Pittman*); *Reid Swayze*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Stanceu, Judge: Before the court is the redetermination ("Second Remand

Redetermination") issued by the International Trade Administration, United States Department

of Commerce ("Commerce" or the "Department") in response to the court's remand order in

*Jinan Yipin Corp. v. United States*, 33 CIT __, 637 F. Supp. 2d 1183 (2009) ("*Jinan Yipin II*").

*Final Results of Redetermination Pursuant to Ct. Remand Order* (Feb. 25, 2010) ("*Second Remand Redetermination*").  In *Jinan Yipin II*, the court held that the first redetermination ("First Remand Redetermination") Commerce issued in this litigation did not comply fully with the court's remand order in *Jinan Yipin Corp. v. United States*, 31 CIT 1901, 526 F. Supp. 2d 1347 (2007) ("*Jinan Yipin I*") and issued a second remand order.  *See Final Results of Redetermination Pursuant to Ct. Remand Order* (Mar. 14, 2008) ("*First Remand Redetermination*").  In response to defendant's request, the court orders a third remand allowing Commerce to redetermine the surrogate value for the labor costs of plaintiff Jinan Yipin Corporation, Ltd. ("Jinan Yipin").  The court sustains the Department's other contested determinations in the Second Remand Redetermination.

## I. BACKGROUND

The background of this litigation is discussed in the court's opinions in *Jinan Yipin I* and *Jinan Yipin II*.  *See* 31 CIT at 1903-04, 526 F. Supp. 2d. at 1349-51; 33 CIT at __, 637 F. Supp. 2d at 1184-85.  Additional background is presented below as a summary and to address events that have occurred since *Jinan Yipin II* was decided.

Jinan Yipin brought this case to contest the final results that Commerce issued in the eighth administrative review ("Final Results") of the antidumping duty order on fresh garlic (the "subject merchandise") imported from the People's Republic of China ("China" or the "PRC") during the period November 1, 2001 to October 31, 2002 ("period of review" or "POR").  *Fresh Garlic From the People's Republic of China: Final Results of Antidumping Duty Admin. Review & New Shipper Reviews*, 69 Fed. Reg. 33,626 (June 16, 2004) ("*Final Results*").  In the First

Remand Redetermination, Commerce assigned plaintiff Jinan Yipin, a Chinese producer and

exporter of the subject merchandise, a weighted average antidumping duty margin of 9.70%.

*First Remand Redetermination* 26.  Commerce assigned plaintiff Shandong Heze International

Trade and Developing Company ("Shandong"), a Chinese exporter of the subject merchandise, a

margin of 43.30%, which was the same margin it assigned to Shandong in the Final Results.  *Id.*

at 27; *Final Results*, 69 Fed. Reg. at 33,629.

     *Jinan Yipin II* ordered Commerce to reconsider its choice of surrogate values for garlic

seed and water use with respect to both plaintiffs, to reconsider its choice of surrogate value for

cardboard cartons with respect to Jinan Yipin, to address possible ministerial errors, and to

recalculate the plaintiffs' dumping margins as necessary.  *Jinan Yipin II*, 33 CIT at __, 637

F. Supp. 2d at 1198.  The Second Remand Redetermination, filed on February 25, 2010, assigns

a 6.58% margin to Jinan Yipin and a 40.66% margin to Shandong.  *Second Remand*

*Redetermination* 49.

     Jinan Yipin filed with the court comments on the Second Remand Redetermination on

April 23, 2010, to which comments defendant filed a reply on August 6, 2010.  Jinan Yipin's

Comments Regarding the Department's Second Remand Redetermination ("Jinan Yipin

Comments"); Def.'s Resp. to Jinan Yipin's Remand Comments ("Def.'s Resp.").  Shandong

filed no comments on the Second Remand Redetermination.

     On July 20, 2010, the court granted Jinan Yipin's consent motion to amend its complaint

to include a new count claiming that Commerce's surrogate value for labor costs in the Final

Results was unlawful.  Order (July 20, 2010), ECF No. 115; Jinan Yipin's Partial Consent Mot.

for Leave to File an Amended Compl.  Finding "any reevaluation of its wage rate methodology

to be outside the scope of this remand proceeding," the Department did not address the labor

costs issue in the Second Remand Redetermination, which was filed prior to the amendment of

Jinan Yipin's complaint. *Second Remand Redetermination* 45-46.  In responding to Jinan

Yipin's comments on the Second Remand Redetermination, defendant has requested a voluntary

remand that would allow Commerce to redetermine Jinan Yipin's labor cost surrogate value.

Def.'s Resp. 16-17.

## II. DISCUSSION

The court will sustain the Department's determination upon remand if it complies with

the court's remand order, is supported by substantial evidence on the record, and is otherwise in

accordance with law.  *See* Tariff Act of 1930 ("Tariff Act" or the "Act"), § 516A(b)(1)(B)(i),

19 U.S.C. § 1516a(b)(1)(B)(i) (2000).  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938).

Because Shandong did not file comments on the Second Remand Redetermination, the

court will affirm the findings and determinations in the Second Remand Redetermination as to

Shandong.  The court will affirm the Department's redetermined surrogate value for Jinan

Yipin's water use, which Jinan Yipin does not contest.

Remaining at issue in this action are surrogate values for Jinan Yipin's garlic seed and

cardboard cartons, Jinan Yipin's allegation that the Second Remand Redetermination contains

ministerial errors in the recalculation of Jinan Yipin's margin, and a surrogate value for Jinan

Yipin's labor expenses.  Jinan Yipin Comments 1-20.  The court concludes that the redetermined

surrogate values for garlic seed and cardboard cartons should be sustained on remand, rejecting

Jinan Yipin's various comments that these values are contrary to law.  The court also concludes

that Jinan Yipin, by failing to exhaust its administrative remedies, may not obtain relief on its

claim that the Second Remand Redetermination contains ministerial errors.  Finally, the court

concludes that defendant should be granted a voluntary remand allowing Commerce to

redetermine the surrogate value for Jinan Yipin's labor cost.

A.  The Court Sustains Commerce's Determination to Value Jinan Yipin's Garlic Seed
According to the National Horticultural Research and Development Foundation Price Lists

Section 773(b)(c) of the Tariff Act, 19 U.S.C. § 1677b(c), requires Commerce to value

factors of production "based on the best available information regarding the values of such

factors in a market economy country" when determining the normal value of subject

merchandise from a non-market economy country.  The "best information," according to the

Department's practice, consists of "review period-wide price averages, prices specific to the

input in question, prices that are net of taxes and import duties, prices that are contemporaneous

with the period of investigation or review, and publicly available data."  *Second Remand*

*Redetermination* 5 (internal quotation omitted).

In the Second Remand Redetermination, Commerce made no change in the surrogate

value of garlic seed that it determined in the Final Results and again in the First Remand

Redetermination.  *Second Remand Redetermination* 3-5.  Commerce once again valued garlic

seed at 50 Rs. per kilogram, which was the value reflected in "News Letters" published by the

National Horticultural Research and Development Foundation ("NHRDF") for two Indian garlic

seed varieties, Agrifound Parvati and Yamuna Safed-3 ("NHRDF garlic").[1]  *Id.*  As it did in the

---

[1] The National Horticultural Research and Development Foundation ("NHRDF") price
(continued...)

First Remand Redetermination, Commerce chose the NHRDF data over two other data sets. One

data set consisted of import statistics for subheading 0703.20.00 ("Garlic Fresh or Chilled") of

the Harmonized Tariff Schedule of the Republic of India, as shown in the *Monthly Statistics of*

*the Foreign Trade of India* published by the World Trade Atlas ("MSFTI data"). *Letter from*

*Jinan Yipin to the Sec'y of Commerce* exhibit 3 (June 30, 2003) (Admin. R. Doc. No. 1553)

("*Jinan Yipin's Surrogate Value Submission*"). The other data source, a "Market Research

Report" that petitioners submitted during the review, contained price data for domestic,

exported, and imported fresh, whole garlic in the Republic of India ("India"). *Letter from*

*Petitioners to the Sec'y of Commerce* exhibit 7 (June 30, 2003) (Admin. R. Doc. No. 1550)

("*Market Research Report*").

In *Jinan Yipin II*, the court concluded that "the Department's rejections of the two

alternate data sources rely on overly broad practices, lack key findings and sound reasoning, and

rely on certain findings that are unsupported by substantial record evidence" and that "[o]n

remand, Commerce must reconsider its decision to use the NHRDF data and base a new

determination on a fair comparison of the three data sets." *Jinan Yipin II*, 33 CIT at __, 637

F. Supp. 2d at 1192. The court added, however, that "the court does not hold that a decision by

Commerce on remand to use the NHRDF data in a determination of the surrogate value for garlic

seed necessarily would be rejected as contrary to law." *Id.*

---

[1](...continued)
lists consist of two pages from each of three NHRDF newsletters covering the periods of July
2001 through March 2002, July 2002 through September 2002, and October 2002 through
December 2002, respectively. *Letter from Petitioners to the Sec'y of Commerce* exhibit 2 (June
30, 2003) (Admin. R. Doc. No. 1550).

The court concluded in *Jinan Yipin II* that Commerce acted unlawfully in basing its

rejection of the MSFTI data solely on the reason that 94% of the garlic imports reflected in those

data were from China, a non-market economy ("NME") country.  *Id.* at __, 637 F. Supp. 2d

at 1188-89.  Although acknowledging that "Commerce reasonably may infer, based on its

findings regarding the presence of government control on various aspects of NMEs, that import

data on goods from an NME country are inferior to import data for goods from a market

economy country," the court reasoned that "a blanket policy of refusing to use import data

pertaining to products exported from an NME country is inconsistent with the statutory

obligation to value factors of production according to the best available information on the

individual record in the specific investigation or review."  *Id.* at __, 637 F. Supp. 2d at 1189

(citing 19 U.S.C. § 1677b(c)(1)).  Applying this blanket policy, Commerce failed "to make a

qualitative comparison between the NHRDF data and the MSFTI import data for China, in

addition to the other competing data on the record."  *Id.* at __, 637 F. Supp. 2d at 1189.

Commerce has made a qualitative comparison on remand.  For the reasons discussed below, the

court concludes that substantial evidence supports the Department's determination that the

NHRDF data are superior to the other data sets on the record.

As it did in the First Remand Redetermination, Commerce concluded, and the record

evidence supports, that the NHRDF data are more specific to Jinan Yipin's garlic seed than are

the domestic garlic data in the Market Research Report, which pertain to garlic with a diameter

greater than 40 millimeters.  *See Second Remand Redetermination* 11; *Market Research

Report* 22.  Both the NHRDF garlic seed varieties and the garlic seed used by Jinan Yipin are

high-yield garlic seeds and produce garlic bulbs of large diameters, which range from 50-65

millimeters.  *Second Remand Redetermination* 5-6; *Letter from Petitioners to the Sec'y of Commerce* exhibit 1, appendix 2 (Aug. 8, 2003) (Admin. R. Doc. No. 2486).  In the First Remand Redetermination, noting that the domestic garlic "are inclusive of garlic that is 10 mm smaller in diameter than the Chinese garlic," Commerce found that the NHRDF garlic were more specific to Jinan Yipin's input, which finding the court upheld in *Jinan Yipin II*.  *First Remand Redetermination* 12-13; *Jinan Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1191-92.  Due to the significant differences in the type of garlic seed, it was permissible for Commerce to continue to give substantial weight to the specificity factor and to reject the domestic price data in the Market Research Report.

Commerce chose the NHRDF data over the data on garlic export prices in the Market Research Report because it found reason to believe or suspect that these export prices were affected by generally available export subsidies in India during the POR.  *Second Remand Redetermination* 18-25.  Commerce pointed to its policy of avoiding subsidized prices when choosing the best available information for valuing a factor of production.  *Id.* at 19.  In support of this policy, Commerce cited legislative history in the form of the conference report associated with the Omnibus Trade and Competitiveness Act of 1988, which enacted section 773(c) of the Tariff Act in its current form.  *Id.* (citing Omnibus Trade and Competitiveness Act of 1988, H.R. Conf. Rep. No. 100-576, at 590-91 (1988) ("*Conf. Rep.*") ("Commerce shall avoid using any prices which it has reason to believe or suspect may be dumped or subsidized prices.")).  Commerce relied on its prior published countervailing duty ("CVD") determinations involving India for its finding of a reason to believe or suspect subsidization.  *Second Remand Redetermination* 22-25.  Because Jinan Yipin's comments to the court on the Second Remand

Redetermination do not contain an argument contesting this finding, the court concludes that any

challenge to this finding has been waived.

Commerce considered the NHRDF data to be superior to both sets of record data on

Indian garlic imports, *i.e.*, the MSFTI data and the import data in the Market Research Report,

relying principally on the record fact, uncontested by Jinan Yipin, that at least 94% of Indian

garlic imports during the POR were imports from China, an NME county. *Second Remand*

*Redetermination* 15; *see Jinan Yipin's Surrogate Value Submission* exhibit 3. Commerce again

cited its "established practice to exclude imports of that [factor of production] from NMEs to the

surrogate market economy country." *Second Remand Redetermination* 13. The Department also

stated that, for purposes of the remand, it reconsidered whether the Indian imports, including the

imports from China, are the best available information for valuing garlic seed. *Id.* at 15. Based

on its finding that the vast majority of the import statistics pertained to China, an NME country,

the Department concluded that the import prices in those statistics are not based on market

principles of cost and price structures. *Id.* at 15-17. The Department relied in part on

congressional intent in deciding to reject the import statistics. *Id*. at 14 (citing *Conf. Rep.*

at 590-91 ("In valuing such factors, Commerce shall avoid using any prices which it has reason

to believe or suspect may be dumped or subsidized prices.")).

In supporting its choice of the NHRDF data over the import data, Commerce also set

forth a finding that the import data are not as specific to the input as the NHRDF data. *Id.* at 15.

With respect to the market economy data in those statistics, Commerce's finding is supported by

substantial record evidence. As the court previously concluded, Commerce "was justified in

determining that the record lacked sufficient information on the physical characteristics of the

garlic represented by the MSFTI import data pertaining to countries other than China." *Jinan*

*Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1189-90.  Substantial evidence supported Commerce's

finding that, if the Chinese imports are removed from the import data sets, the remaining price

data would still be inferior to the NHRDF price lists because the record contains insufficient

evidence on the physical characteristics of garlic imports from countries other than China.

Although the Market Research Report speculates that certain market economy countries were

exporting Chinese-origin garlic to India, Commerce permissibly declined to rely on such

speculation.  *Second Remand Redetermination* 15-16.

   The record does not support, however, the Department's finding that the data on imports

from China are less specific to the input than are the NHRDF data.  *See id.* at 14-16.  As the

court concluded in *Jinan Yipin I* and *Jinan Yipin II*, the Market Research Report contains

information indicating that the Chinese imports of garlic are imported in the form of whole bulbs

and are comparable to the subject merchandise with respect to bulb diameter and number of

cloves per bulb.  *Jinan Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1187 (citing *Jinan Yipin I*,

31 CIT at 1903-04, 526 F. Supp. 2d. at 1370); *see Market Research Report* 29.  In the Second

Remand Redetermination, Commerce refused to consider that information, concluding that the

information "does not meet the Department's standards for public availability."  *Second Remand*

*Redetermination* 16.  The court finds that Commerce erred in refusing to consider this

information.  Whether or not the information is publicly available may be a factor in determining

the reliability of record evidence, but in this case the information is probative on the issue of

specificity.  The lack of public availability is not a reason to ignore evidence from which it may

be concluded that the Chinese import data are at least comparable to the NHRDF data in terms of

specificity to the input.  The court does not find on the record other evidence that refutes the

evidence on the physical characteristics of the imports from China that Commerce rejected

because it was not shown to be publicly available.  Moreover, the record contains certain

evidence indicating that the NHRDF price data are, in one respect, *less* specific than the import

data pertaining to Chinese garlic.  The former pertain to "clonal" seed varieties, and there is no

evidence of record to indicate that the subject merchandise was grown from seeds that were

developed clonally.  *See* Jinan Yipin Comments 4.  In summary, the court must conclude that the

record, considered as a whole, does not contain substantial evidence to support Commerce's

finding that the data on imports from China are less specific to the input than are the data in the

NHRDF price lists.

Although Commerce erred in finding that the Chinese import data are less specific than

the NHRDF data for valuing the garlic seed input, the court concludes that this error was

inconsequential.  The court finds within the Second Remand Redetermination sufficient findings,

evidentiary support, and explanation to affirm the Department's ultimate determination that the

NHRDF data are superior to the import data.  The Department chose the NHRDF data over the

import data for two principal reasons: its finding, supported by substantial evidence, that there is

insufficient record information to establish what type of garlic was being imported from

countries other than China and its conclusion that the prices in the garlic imports from China are

not based on market principles and therefore are less reliable than are prices of imports from

market economy countries.  With respect to its specific decision to choose the NHRDF data over

the data on imports from China, Commerce placed substantial, if not controlling, weight on the

latter reason, based on the legislative history.  *Second Remand Redetermination* 17.  When the

court views these two reasons together with the record evidence establishing that the NHRDF

data are roughly comparable to the Chinese import data with respect to specificity to the input,

the court finds in the record a sufficient basis to uphold the Department's choice.  Commerce has

considerable discretion in determining the best available information with which to value factors

of production.  *Nation Ford Chemical Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir.

1999).  On this record, the court will not overturn the Department's exercise of that discretion.

  Among Jinan Yipin's arguments opposing the Department's choice of the NHRDF prices

is that the NHRDF garlic seeds, being clonal varieties, were specially designed to produce larger

bulbs and therefore were more expensive than the garlic seeds being valued.  Jinan Yipin

Comments 2-9.  Jinan Yipin points out that it did not have to buy specially designed seed

because the native garlic seed in China could produce large bulbs.  *Id.* at 4.  The record evidence

establishing that the NHRDF seeds were specially designed and clonal detracts from the

Department's finding on relative specificity to the input, but, for the reasons discussed above, the

court finds in the record, considered on the whole, sufficient other evidence to support the

Department's decision to choose the NHRDF data over the import data.  Jinan Yipin also makes

the related argument that the size of a garlic bulb does not depend on the seed from which it

grew but only on the growing conditions, including the cooler climate in the higher elevations of

hilly terrain and a relatively greater amount of sunlight in "long-day" latitudes.  *Id*. at 2-3.  The

court rejects this related argument as unsupported by any record evidence.  What evidence exists

on the record indicates instead that the type of seed used partly determines the size of the

resulting bulb.  *See Market Research Report* 5.

Pointing out that the record lacks evidence of any individual sales of the NHRDF garlic seeds, Jinan Yipin further argues that substantial evidence did not support Commerce's finding that the NHRDF price lists refer to actual sale prices. Jinan Yipin Comments 6-7. The court rejects this argument because the documentary evidence consisting of the NHRDF price lists displays sufficient indicia of offers for sale to support Commerce's finding that NHRDF price lists were "intended for market transactions." *Second Remand Redetermination* 40. Each of the lists contains a table entitled "Sale Rates of NHRDF Vegetable Seeds." *Letter from Petitioners to the Sec'y of Commerce* exhibit 2 (June 30, 2003) (Admin. R. Doc. No. 1550). Each table includes a column for "Sale price," as well as a column for "Available packing & Size." *Id.* Beneath the table is a disclaimer that rates were subject to change. *Id.*

Jinan Yipin also argues that the discrepancy between the price reflected by the domestic price data in the Market Research Report, 31.93 Rs. per kilogram, and the price reflected by the NHRDF price lists, 50 Rs. per kilogram, undermines the accuracy of the NHRDF price lists. Jinan Yipin Comments 7. This argument is not convincing to the court because the NHRDF garlic seeds produce garlic bulbs with physical characteristics closely matching the subject merchandise. The same cannot be said of the Indian garlic to which the domestic price data refer. *See Jinan Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1191-92; *see also Market Research Report* 22 (indicating that garlic prices relate to the garlic bulb's diameter).

Finally, Jinan Yipin argues that the NHRDF data were flawed in that they reflect the experience of only one seller, *i.e.*, NHRDF, which operated only in a narrow part of India, while the domestic and import data reflect the experience of many sellers and are country-wide. Jinan Yipin Comments 9-10. This argument also fails to convince the court that the Department's

ultimate determination that the NHRDF data were the best available information for valuing the

garlic seed input, as explained in the Second Remand Redetermination, must be overturned upon

judicial review.  Although the record evidence shows that the Agrifound Parvati and Yamuna

Safed-3 seed varieties were gaining in popularity in the northern neck of India, where the

growing conditions are suitable for producing high-yield, large-bulb garlic highly similar to the

subject merchandise, *Market Research Report* 3-4, the evidence does not support a finding or

inference that the availability of the NHRDF seed is limited to a small area of India.  Moreover,

the record establishes the fact that the NHRDF price data are the only data of record pertaining

to sales of domestic-origin Indian garlic seeds that are physically comparable to the subject

merchandise.  The Department reasonably gave significant weight to this fact.  The fact that this

seed is not widely used throughout the country of India is not enough, standing alone, to

convince the court that Commerce acted contrary to record evidence on the whole in selecting

the NHRDF price data.

    Having considered all of Jinan Yipin's arguments and having found them unconvincing,

the court will sustain the Department's choice of surrogate value for the valuation of Jinan

Yipin's garlic seed as a determination that is supported by substantial evidence on the record.

B.  No Relief is Available on Jinan Yipin's Claim Challenging the Surrogate Value of Cardboard
                                                        Cartons

    As it did in the Final Results and First Remand Redetermination, Commerce valued Jinan

Yipin's cardboard cartons using Indian import data that excluded exports from Thailand, South

Korea, and Indonesia.  *Second Remand Redetermination* 30-31.  Once again citing its practice as

supported by legislative history, Commerce excluded export data from these three countries

because it found that "there is 'reason to believe or suspect'" that the export prices pertaining to

these countries were affected by generally available export subsidies. *Id.* In *Jinan Yipin II*, the

court concluded that Commerce's exclusion of export data from these three countries in the First

Remand Redetermination was unsupported because it was based on nothing more than a "general

policy or practice." *Jinan Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1196. The court concluded

that Commerce had "failed to make a finding, supported by substantial evidence on the record of

this administrative review, that export subsidy programs exist in these three countries that

affected or likely affected exports of" cardboard cartons.[2] *Id.* at __, 637 F. Supp. 2d at 1196.

   In the Second Remand Redetermination, Commerce supports with its prior published

CVD determinations its finding that there is reason to believe or suspect that export subsidies

affected exports from Thailand, South Korea, and Indonesia.[3] *Second Remand Redetermination*

32-35. Jinan Yipin does not dispute the sufficiency of this evidence, arguing instead that

Commerce acted arbitrarily and capriciously in excluding export data from Thailand, South

Korea and Indonesia but not Singapore, even though Commerce's prior CVD determinations

---

   [2] The court's opinion erroneously referred to exports of "garlic" instead of cardboard cartons for the garlic. *Jinan Yipin Corp. v. United States*, 33 CIT __, 637 F. Supp. 2d 1183, 1196 (2009) ("*Jinan Yipin II*").

   [3] The court may take judicial notice of the published determinations of the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department"), *see* Fed. R. Evid. 201, whether or not prior countervailing duty ("CVD") determinations are record evidence as defined by 19 U.S.C. § 1516a(b)(2) (2000) or 19 C.F.R. § 351.104(a) (2003). *See Remand Record*, Consol. Court. No. 04-00240 (Mar. 9, 2010), ECF No. 104 (not listing CVD determinations on the administrative record for the *Final Results of Redetermination Pursuant to Ct. Remand Order* (Feb. 25, 2010) ("*Second Remand Redetermination*")).

implied that export subsidies existed in all four countries. Jinan Yipin Comments 11-12. The court rejects this argument on the merits and will uphold Commerce's determination.[4]

Jinan Yipin's "arbitrary and capricious" argument fails because Commerce had a valid reason to treat the Singaporean data differently. Prior CVD determinations pertaining to Thailand, Indonesia, and South Korea contain explicit findings that export subsidies existed during the time period corresponding to the POR, but Jinan Yipin can point to no similar finding with respect to Singapore.[5]

---

[4] In reaching the merits of plaintiff's argument, the court rejects defendant's argument that Jinan Yipin Corporation, Ltd. ("Jinan Yipin") failed to exhaust its administrative remedies by not previously challenging Commerce's use of Singaporean export data. Def.'s Resp. to Jinan Yipin's Remand Comments 12-13 (quoting the Customs Courts Act of 1980, § 301, 28 U.S.C. § 2637(d) (2000) (the court "shall, where appropriate, require exhaustion of administrative remedies.")). Jinan Yipin could not have raised this argument earlier because this argument responds to the Department's justification for its determination in the Second Remand Redetermination. Jinan Yipin alleged an inconsistency in Commerce's reliance upon its prior CVD determinations for factual support at the first opportunity.

The court also rejects defendant's argument that addressing Jinan Yipin's argument would have exceeded the scope of the court's remand order. *See Second Remand Redetermination* 45. The court ordered that "Commerce shall redetermine the surrogate values of Jinan Yipin's . . . cardboard cartons," *Jinan Yipin II*, 33 CIT at __, 637 F. Supp. 2d at 1198, which required Commerce to decide whether excluding the Singaporean data would yield the best available information. *See* 19 U.S.C. § 1677b(c) (2000).

[5] *Compare Certain Cut-to-Length Carbon-Quality Steel Plate from Indonesia: Final Results of Expedited Sunset Review*, 70 Fed. Reg. 45,692 (Aug. 8, 2005) & Issues & Decisions Mem., C-560-806, at 1 (Aug. 1, 2005), *available at* http://ia.ita.doc.gov/frn/summary/indonesia/E5-4258-1.pdf; *Final Results of Countervailing Duty Admin. Review: Stainless Steel Sheet & Strip in Coils from the Republic of Korea*, 69 Fed. Reg. 2,113 (Jan. 14, 2004) & Issues & Decisions Mem., C-580-835, at 7-9 (Jan. 14, 2004), *available at* http://ia.ita.doc.gov/frn/summary/korea-south/04-832-1.pdf; *Hot-Rolled Carbon Steel Flat Products from Argentina, India, Indonesia, South Africa, & Thailand: Final Results of Expedited Five-Year (Sunset) Reviews of the Countervailing Duty Orders*, 71 Fed. Red. 70,960 (Dec. 7, 2006) & Issues & Decisions Mem., C-357-815, C-533-821, C-560-813, C-791-810, C-549-818, at 15-16 (Dec. 7, 2006), *available at* http://ia.ita.doc.gov/frn/summary/MULTIPLE/E6-20699-1.pdf *with Final Affirmative*

(continued...)

### C.  Commerce Was Not Required to Consider Jinan Yipin's New Allegations of Ministerial Error

Commerce refused to investigate two alleged ministerial errors that, according to Jinan Yipin, affected the redetermined margins in the Second Remand Redetermination.[6]  *Second Remand Redetermination* 47-49; Jinan Yipin Comments 17-20.  Jinan Yipin argues that this refusal was an abuse of discretion because it was contrary to the statutory mandate to determine dumping margins as accurately as possible.  Jinan Yipin Comments 17-20.  The court holds that Commerce was not required to investigate these ministerial error allegations on remand.

Commerce has discretion to choose not to respond to allegations of ministerial error that were not timely made.  *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376-77 (Fed. Cir. 2010). Jinan Yipin directs its allegations to calculations in which the errors, if they existed, have been apparent since December 2003.  *Second Remand Redetermination* 47.  These ministerial error allegations were not made within the five-day time period following release of the calculations to Jinan Yipin, as required by the Department's regulations.  *See* 19 C.F.R. § 351.224(c)(2) (2003) (setting the five-day deadline); *Second Remand Redetermination* 48 (stating that the alleged errors were discoverable in the preliminary results).  Although Commerce is required to

---

[5](...continued)
*Countervailing Duty Determinations & Countervailing Duty Orders: Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts Thereof From Singapore*, 54 Fed. Reg. 19,125 (May 3, 1989) & *Preliminary Affirmative Countervailing Duty Determinations: Certain Refrigeration Compressors From the Republic of Singapore*, 48 Fed. Reg. 39,109 (Aug. 29, 1983).

[6] The regulations define a "ministerial error" as "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." 19 C.F.R. § 351.224(f).

determine dumping margins accurately, the Department's interests in finality and efficiency

suffice to allow the Department to refuse to address ministerial error allegations that are as

untimely as these.  *See Second Remand Redetermination* 48-49 (stating that the Department

"does not have the administrative resources to continually re-examine the record of the review to

test the authenticity and legitimacy of new ministerial error allegations that are untimely

filed . . . .").  In the circumstances of this case, in which Jinan Yipin alleged the errors more than

six years after possible errors could have been discovered and after the court already has

remanded once for consideration of new ministerial error allegations, Commerce did not abuse

its discretion in refusing to address Jinan Yipin's latest allegations.

>    D.  The Court Will Grant Commerce's Request for a Voluntary Remand to Redetermine Jinan
>         Yipin's Labor Expenses Pursuant to a Lawful Methodology

Defendant requests that the court order a remand allowing Commerce to redetermine the

surrogate value of Jinan Yipin's labor expenses.  Def.'s Resp. 16-17.  The court determines that

such a remand is appropriate.

Remand is generally appropriate when an intervening legal decision renders an agency's

actions unlawful.  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001).

Here, an intervening legal decision invalidated the regulation pursuant to which Commerce

calculated the labor expenses.  *See Dorbest*, 604 F.3d at 1371-73 (holding unlawful 19 C.F.R.

§ 408(c)(3) (2000)).  Therefore, the court will order Commerce to redetermine Jinan Yipin's

labor rate on remand according to a lawful methodology.

## III.  CONCLUSION

For the reasons stated above, the court rejects Jinan Yipin's challenges to Commerce's

redeterminations of the surrogate values for garlic seed and for cardboard cartons and affirms

Commerce's uncontested redetermination of the surrogate value of Jinan Yipin's use of water.

The court concludes that Commerce lawfully refused to consider allegations of ministerial error

submitted well past the time when such allegations are required by regulation to be submitted.

The court will grant defendant's request for a voluntary remand so that Commerce may

redetermine its valuation of labor costs in accordance with law and the holding in *Dorbest*, 604

F.3d at 1371-73.

## ORDER

Based on the court's conclusions and the foregoing discussion, it is hereby

**ORDERED** that the *Final Results of Redetermination Pursuant to Ct. Remand Order*
(Feb. 25, 2010) ("Second Remand Redetermination") are AFFIRMED IN PART and
REMANDED IN PART; it is further

**ORDERED** that the Second Remand Redetermination is affirmed in all respects as to
Shandong Heze International Trade and Developing Company; it is further

**ORDERED** that the Second Remand Redetermination is affirmed with respect to the
Department's redetermination of the surrogate values for the consumption of garlic seed,
cardboard cartons, and water by Jinan Yipin Corporation, Ltd. ("Jinan Yipin"); it is further

**ORDERED** that Commerce shall submit to the court a redetermination upon remand
("Third Remand Redetermination") in which it redetermines the surrogate value of labor costs
for Jinan Yipin using a method that complies with applicable law, including the holding of the
United States Court of Appeals for the Federal Circuit in *Dorbest Ltd. v. United States*, 604 F.3d
1363 (Fed. Cir. 2010); it is further

**ORDERED** that Commerce shall redetermine as necessary the weighted average
antidumping duty margin that it applied in *Fresh Garlic From the People's Republic of China:
Final Results of Antidumping Duty Admin. Review & New Shipper Reviews*, 69 Fed. Reg. 33,626
(June 16, 2004) to the subject merchandise of Jinan Yipin for the period of review; it is further

**ORDERED** that Commerce shall ensure that its redetermination is supported by
substantial evidence, otherwise in accordance with law, and supported by adequate reasoning;
and it is further

**ORDERED** that Commerce shall have sixty (60) days from the date of this Order to complete and file its remand determination; Jinan Yipin shall have thirty (30) days from that filing to file comments; and defendant shall have fifteen (15) days after Jinan Yipin's comments are filed to file any reply.

                                                                             /s/ Timothy C. Stanceu
                                                                            Timothy C. Stanceu
                                                                            Judge

Dated: April 12, 2011
          New York, New York